[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION REGARDING MOTION TO STRIKE
On February 21, 2000, the plaintiffs, Lynn Wattman, individually and as Administratrix for the Estate of Steven Wattman; and Haley Wattman PPA Lynn Wattman, filed a fourteen count complaint against the defendants, New Hartford Volunteer Fire Department Ambulance Service Inc.; Campion Ambulance Service Inc. (Campion); Sherwood Carey; Tammy Chase (Chase); and Jonathan Fleming. This action arises from the death of Steven Wattman, which is alleged to be the result of the defendants' actions and inactions in administering medical treatment to the decedent.
On May 9, 2000, Campion and Chase moved to strike counts six, ten, thirteen, fourteen, and all paragraphs alleging that Chase provided paramedic services without a license, as contained in numerous other counts.[1] On October 12, 2000, Campion and Chase filed a supplemental motion to strike seeking to strike count four.
Count four is brought on behalf of the Estate of Steven Wattman and alleges wilful and wanton misconduct. Count six, also brought on behalf of the Estate of Steven Wattman, alleges gross negligence. Count thirteen is brought on behalf of Lynn Wattman for bystander emotional distress. Finally, count fourteen is brought on behalf of Haley Wattman for bystander emotional distress. CT Page 13861
 DISCUSSION
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegation of any [complaint] . . . to state a claim upon which relief can be granted." (Internal quotation marks omitted.)Peter-Michael, Inc. v. Sea Shell Associates, 244 Conn. 269, 270,709 A.2d 558 (1998). In ruling on a motion to strike, the trial court is to "determine whether the [pleading party has] stated a legally sufficient cause of action." (Internal quotation marks omitted.) Dodd v.Middlesex Mutual Assurance Co., 242 Conn. 375, 378, 698 A.2d 859 (1997). The court must "construe the complaint in the manner most favorable to sustaining its legal sufficiency." Lombard v. Edward J. Peters, Jr.,P.C., 252 Conn. 623, 626, 749 A.2d 630 (2000). "What is necessarily implied [in an allegation] need not be expressly alleged." Gazo v. Cityof Stamford, 255 Conn. 245, 260, 765 A.2d 505 (2001). "A motion to strike is properly granted if the complaint alleges mere conclusions of law that are unsupported by the facts alleged." Novametrix Medical Systems, Inc.v. BOC Group, Inc., 224 Conn. 210, 215, 618 A.2d 25 (1992); see also Inre Michael D., 58 Conn. App. 119, 122, 752 A.2d 1135, cert. denied,254 Conn. 911, 759 A.2d 505 (2000).
Although the defendants' motion to strike and supplemental motion to strike fail to distinctly specify the reasons for the alleged legal insufficiencies, the defendants offer the following arguments in their memoranda of law.[2] As to count four, the defendants argue that the conduct alleged to plead wilful and wanton misconduct is insufficient because the same conduct was used to plead negligence. As to count six, the defendants argue that Connecticut does not recognize a cause of action for gross negligence and General Statutes § 52-557b, the Good Samaritan Statute, does not create a cause of action in derogation of the common law. Finally, as to counts thirteen and fourteen, the defendants argue that the gravamen of the plaintiffs' allegations is an assertion of negligence and, in the context of the negligent delivery of medical services, no cause of action for bystander emotional distress is permitted.
In opposition to the defendants' motion to strike, the plaintiffs argue that the court should deny the motion as to counts four, six, thirteen, and fourteen because: "(1) implicit in General Statutes § 52-557b is a private right of action sounding in gross negligence; (2) the common law is not static and should recognize gross negligence as [a] cause of action against ambulance companies; (3) bystander emotional distress is a recognized cause of action in Connecticut, and (4) the plaintiffs have properly plead a claim of wilful and wanton misconduct."
 A. Count Four: Wilful and Wanton Misconduct
CT Page 13862
"Wanton misconduct is reckless misconduct" (Internal quotation marks omitted.) West Haven v. Hartford Ins. Co., 221 Conn. 149, 160, 602 A.2d 988
(1992). "A cause of action claiming wanton and reckless misconduct is separate and distinct from a cause of action alleging negligence." (Internal quotation marks omitted.) Belanger v. Village I, Inc.,26 Conn. App. 509, 513, 603 A.2d 1173 (1992). "Recklessness requires a conscious choice of a cause of action either with knowledge of the serious danger to others involved in it or with knowledge of facts which would disclose this danger to any reasonable man, and the actor must recognize that his conduct involves a risk substantially greater . . . than that which is necessary to make his conduct negligent." (Internal quotation marks omitted.) Bishop v. Kelly, 206 Conn. 608, 614-15,539 A.2d 108 (1988). "A plaintiff cannot transform a negligence count into a count for wilful and wanton misconduct merely by appending a string of adjectives to allegations that clearly sound in negligence."Brown v. Branford, 12 Conn. App. 106, 110, 529 A.2d 743 (1987).
The plaintiffs allege that both Campion and Chase held themselves out to provide competent emergency medical services and transportation, and that they were called upon to provide emergency medical care to Steven Wattman. The plaintiffs further allege that the defendants' conduct, in providing care to Steven Wattman, was wilful and wanton because they knew or should have known that certain actions were necessary and they failed to take those actions. Specifically, the plaintiffs assert that the defendants failed to do the following things that they knew were necessary under the circumstances begin CPR in a timely manner; continue CPR; monitor the effectiveness of the oxygen therapy; and properly incubate and transport Steven Wattman to the hospital.
The defendants maintain that count four alleges conduct identical to that alleged in count two, which sounds in negligence. The defendants argue that because wilful and wanton misconduct is more than negligence, count four contains insufficient allegations to establish a cause of action for wilful and wanton misconduct.
"A cause of action in recklessness may be sufficiently alleged upon the same facts that would support a cause of action in negligence provided the allegations are independently sufficient to support a cause of action in recklessness." Walsh v. Abbott Terrace Health Center, Inc., Superior Court, judicial district of Waterbury, Docket No. 137269 (September 18, 2000, Wiese, J.). In viewing the complaint in the light most favorable to sustaining its legal sufficiency, the plaintiff alleged sufficient facts to support the contention that the defendants, as medical care professionals, knew certain actions were necessary to save Steven Wattman's life and they failed to take those actions. Accordingly, the CT Page 13863 defendants' motion to strike count four of the plaintiffs' revised complaint is denied.
 B. Count Six: Gross Negligence
At common law, Connecticut has never recognized gross negligence as a separate basis of liability in the law of tons. Decker v. Roberts,125 Conn. 150, 157, 3 A.2d 855 (1939). The plaintiffs argue that a statutory cause of action for gross negligence is created by General Statutes § 52-557b, the Good Samaritan Law. Specifically, the plaintiffs argue that this private right of action arises from subsection (b) of § 52-557b, which provides:
 "A paid or volunteer fireman or policeman, a teacher or other school personnel on the school grounds or in the school building or at a school function, a member of a ski patrol, a lifeguard, a conservation officer, patrolman or special policeman of the Department of Environmental Protection, or ambulance personnel, who has completed a course in first aid offered by the American Red Cross, the American Heart Association, the National Ski Patrol, the Department of Public Health or any director of health, as certified by the agency or director of health offering the course, and who renders emergency first aid to a person in need thereof, shall not be liable to such person assisted for civil damages for any personal injuries which result from the acts or omissions by such person in rendering the emergency first aid, which may constitute ordinary negligence. No paid or volunteer fireman, policeman who forcibly enters the residence of any person in order to render emergency first aid to a person whom such fireman, policeman or ambulance personnel reasonably believes to be in need thereof shall be liable to such person for civil damages incurred as a result of such entry. The immunity provided in this subsection does not apply to acts or omissions constituting gross, wilful or wanton negligence." (Emphasis added.)
In construing statutes the court is to presume that there is a purpose behind every sentence, clause, or phrase. Waterbury Petroleum Productsv. Canaan Oil and Fuel, 193 Conn. 208, 231-32, 477 A.2d 988 (1984). Statutes in derogation of common law, however, "should receive a strict CT Page 13864 construction and [should not] be extended, modified, repealed or enlarged (Internal quotation marks omitted.) Bhinder v. Sun Company, Inc.,246 Conn. 223, 231, 717 A.2d 202 (1998).
The defendants argue that § 52-557b(b), in creating immunity for acts of ordinary negligence and excluding acts of gross, wilful or wanton negligence, does not create a cause of action in derogation of the common law. The defendants cite three superior court cases to support their position: Shomsky v. City of Shelton, Superior Court, judicial district of Milford, Docket No. 058215 (October 7, 1998, Thompson, J.); Shaham v.Wheeler, Superior Court, judicial district of Danbury, Docket No. 321879 (March 12, 1998, Nadeau, J); and Croteau v. American Medical Response ofConnecticut, Superior Court, judicial district of New Haven at Meriden, Docket No. 256039 (July 13, 1998, Levine, J.).
The Supreme Court held in Rumbin v. Utica Mutual Ins., 254 Conn. 259,266, 757 A.2d 526 (2000) that "[w]e recognize only those alterations of the common law that are clearly expressed in the language of the statute. . . ." Id., 265-66. "In the absence of such explicit language, we adhere to our long-standing rule that "[n]o statute is to be construed as altering the common law, farther than its words import [and a statute] is not to be construed as making any innovation upon the common law which it does not fairly express'." Id., 266. Thus, § 52-557b(b) must contain explicit language in order to create a cause of action in gross negligence, not implicit or implied language. Conn. Gen. Stat. §52-557b(b) does not explicitly create a cause of action for gross negligence. Accordingly, the defendants' motion to strike count six of the plaintiffs' complaint is granted.
 C. Counts Thirteen and Fourteen — Bystander Emotional Distress
The defendants argue that the court should strike counts thirteen and fourteen of the plaintiffs' complaint because Connecticut does not recognize a cause of action for bystander emotional distress in the context of negligent medical services. In support of their argument, the defendants rely on Maloney v. Conroy, 208 Conn. 392, 545 A.2d 1059
(1988). The plaintiffs maintain that Maloney is no longer good law in light of the Supreme Court's decision in Clohessy v. Bachelor,237 Conn. 31, 675 A.2d 852 (1996).
In Maloney, the plaintiff sought damages from two doctors and a hospital for emotional distress alleged to have resulted from the defendants' malpractice in treating her mother. The Supreme Court set forth a bright line rule which holds that "a bystander to medical malpractice may not recover for emotional distress. . . ." Maloney v.Conroy, supra, 208 Conn. 393. The court indicated that "[w]hatever may be CT Page 13865 the situation in other contexts where bystander emotional disturbance claims arise, we are convinced that, with respect to such claims arising from malpractice on another person, we should return to the position we articulated in Strazza that there can be no recovery for nervous shock and mental anguish caused by the sight of injury or threatened harm to another."[3] (Internal quotation marks omitted.) Id., 402.
The Supreme Court later adopted, in Clohessy, a "reasonable foreseeability" rule and set forth a four prong test for the recognition of a cause of action for bystander emotional distress. The four prong test requires a plaintiff to prove the following: "(1) he or she is closely related to the injury victim, such as the parent or the sibling of the victim; (2) the emotional injury of the bystander is caused by the contemporaneous sensory perception of the event or conduct that causes the injury, or by arriving on the scene soon thereafter and before substantial change has occurred in the victim's condition or location; (3) the injury of the victim must be substantial, resulting in his or her death or serious physical injury; and (4) the bystanders emotional injury must be serious, beyond that which would be anticipated in a disinterested witness and which is not the result of an abnormal response." Clohessy v. Bachelor, supra, 237 Conn. 56. In its reasoning, the court expressly overruled Strazza v. McKittrick, 146 Conn. 714,156 A.2d 149 (1959), but did not expressly overrule Maloney or address its continuing application. After Clohessy, there has been a split of authority among trial courts as to whether the rule in Clohessy or the rule in Maloney should be applied in situations of medical malpractice.
The Supreme Court, however, subsequently reaffirmed the Maloney holding in Mendillo v. Board of Education, 246 Conn. 456, 717 A.2d 1177 (1998). In Mendillo, the Supreme Court, inter alia, failed to recognize a claim for loss of parental consortium by minor children resulting from serious injury to the children's parents. Id., 457. The minor plaintiffs argued the "[a]pplication of this court's logic in Clohessy to the question of whether a tortfeasor's liability should extend to . . . loss of [parental] consortium properly constructs that the time is similarly ripe to recognize such cause of action. . . ." Id., 479. The court stated that "[a]lthough we have never specifically said so, our cases suggest that the imposition of third party liability on a tortfeasor is an exception to the general rule of the scope of tort liability that requires satisfaction of a special policy inquiry." Id., 480.
While the court held that public policy considerations justified a cause of action for bystander emotional distress in Clohessy, the court favorably referred to Maloney twice in citing instances where public policy precluded a cause of action in tort based on third party liability. The court further indicated, "[i]t is true that we have, in at CT Page 13866 least one other circumstance, recognized a cause of action with arbitrary limits. . . . The fact that we have imposed arbitrary limits elsewhere, however, is not a persuasive argument for doing so in the present case." Id., 486.
Accordingly, the court in Clohessy did not overule or limit Maloney and in fact specifically continued to refer to Maloney favorably in Mendillo
as an example of cases where tort liability is not extended to third parties.
The plaintiffs argue that even if Maloney is good law and precludes a claim of bystander emotional distress in medical malpractice cases, it is limited to claims arising in hospital settings. The plaintiffs contend that in Maloney, the court was concerned that creating a cause of action for third party bystanders would cause hospitals to limit or prohibit patient visitation and that these concerns do not arise in the present case. The court in Maloney, however, was not only concerned with the social consequences of limiting or prohibiting patient visitation, but was also concerned with the "diversion of [a medical care provider's] attention or resources to accommodate the sensitivity of others." Maloneyv. Conroy, supra, 237 Conn. 403. The possibility of a medical care provider's attention being diverted to accommodate the sensitivity of others is certainly possible wherever medical attention is provided. Hence, similar public policy considerations do arise in the present case.
Accordingly, until the rule in Maloney is reversed, modified, or limited by the Supreme Court, a cause of action for bystander emotional distress in medical malpractice cases is not recognized. Defendants' motion to strike counts thirteen and fourteen of the plaintiffs' amended complaint is granted.
CHASE T. ROGERS SUPERIOR COURT JUDGE